IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| 3139 PROPERTIES, LLC, a Hawaii limited liability company; and DUNCAN MACNAUGHTON, dba THE MACNAUGHTON GROUP, | ) ) ) ) ) | CIVIL NO. 06-00619 SOM/LEK |
| Plaintiffs, | ) ) ) | ORDER GRANTING FIRST SPECIALTY INSURANCE CORPORATION'S MOTION FOR |
| vs. | ) ) ) | SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR |
| FIRST SPECIALTY INSURANCE CORPORATION, a Missouri corporation; and DOES 1-10, | ) ) ) ) | SUMMARY JUDGMENT |
| Defendants. | ) ) ) | |

ORDER GRANTING FIRST SPECIALTY INSURANCE CORPORATION'S
MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

I.       INTRODUCTION.

This case, brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeks a determination as to whether First Specialty Insurance Corporation has a duty to defend 3139 Properties, LLC, and Duncan MacNaughton, from claims brought against 3139 and MacNaughton in a state court action. First Specialty insured 3139 and MacNaughton under a commercial general liability policy. Because there is no possibility of coverage under that policy, summary judgment is granted in favor of First Specialty.

II.      BACKGROUND.

In the Spring of 2004, Brigitte M. Egbert, the assistant vice president of Monarch Insurance and an insurance

broker, sought insurance coverage for 3139 and MacNaughton. Egbert says that she was supposed to obtain insurance coverage that would protect 3139 and MacNaughton from lawsuits and claims arising out of the construction and development of three luxury homes being built by 3139.  See Affidavit of Brigitte M. Egbert (Apr. 5, 2007) ¶¶ 1-2.  Egbert thought that an "Owners and Contractors Protective Liability Policy" ("OCP Policy") would protect 3139 from claims by disgruntled purchasers.  Id. ¶ 3.

Egbert contacted Brown & Riding Insurance Services, an insurance brokerage and wholesaler.  She faxed a commercial insurance application to Monika M. Arboles at Brown & Riding. See Ex. A to Egbert's Aff.  This application appears to have sought "OWNER'S & CONTRACTOR'S PROTECTIVE" insurance.  Id.

On or about March 25, 2004, Arboles emailed Egbert that Arboles was negotiating with First Specialty for an "owner's protective" policy.  See Ex. B to Egbert's Aff.  Egbert says that First Specialty provided two quotes for 3139's OCP Policy. Egbert Aff. ¶ 7.  However, the quotes, attached to her affidavit as Exhibit C, do not appear to be for OCP Policies.  Id.  This should not have surprised Egbert.  Arboles had emailed Egbert on April 5, 2004, saying, "Please note that your quotes from First Specialty are not for a true Owner's Protective policy. . . . They are really for a 1.5 or 2-year CGL for the designated project only and would serve to provide the developer with an

2

additional layer of coverage beyond being a named insured under the general contractor's project policy.".  Email from Monika Arboles to Brigitte Egbert (Apr. 5, 2004).

Egbert eventually asked First Specialty to bind one of the quoted coverages.  <u>See</u> Ex. E to Egbert's Aff.  On or about May 4, 2004, First Specialty issued a binder of coverage to 3139. <u>See</u> Ex. C to Stipulated Facts (Apr. 4, 2007).  This binder of coverage indicated that the "terms and conditions may not include all elements requested in your Submission."  <u>Id.</u>

First Specialty issued Policy Number IRG55011 to 3139, covering the period of May 3, 2004, to May 3, 2006 (the "3139 Policy").  <u>See</u> Ex. D to Stipulated Facts.  Notwithstanding any attempt by Egbert to obtain an OCP Policy for 3139, the title and language of the policy issued by First Specialty indicated that it was a Commercial General Liability Policy ("CGL Policy").

The 3139 Policy contains a named insured endorsement that identifies both 3139 and MacNaughton as named insureds.  The 3139 Policy also has an integration clause that says the 3139 Policy "contains all the agreements between you [3139 and MacNaughton] and us [First Specialty] concerning the insurance afforded."  3139 Policy, Common Policy Conditions ¶ B.  The 3139 Policy says that First Specialty "will pay those sums that the insured [3139] becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance

3

applies." 3139 Policy, Section I--Coverages ¶ 1(a).  The 3139

Policy defines "property damage" as "Physical injury to tangible

property, including all resulting loss of use of that property"

or "Loss of use of tangible property that is not physically

injured." 3139 Policy, Section V--Definitions ¶ 17.  The 3139

Policy covers property damage only if "caused by an

'occurrence,'" 3139 Policy, Section I--Coverages ¶ 1(b), and

defines "occurrence" as "an accident, including continuous or

repeated exposure to substantially the same general harmful

conditions," 3139 Policy, Section V--Definitions ¶ 13.  Coverage

for property damage "expected or intended from the standpoint of

the insured" is excluded.  3139 Policy, Section I--Coverages

¶ 2(a).

       The 3139 Policy also has an endorsement limiting

coverage to property damage arising out of "1. The ownership,

maintenance or use of the premises shown in the Schedule and

operations necessary or incidental to those premises; or 2. The

project shown in the Schedule." 3139 Policy, Limitation of

Coverage to Designated Premises or Project.  There is no dispute

that the project is the residences being built by 3139.

       On or about January 25, 2006, 3139 and MacNaughton were

sued by Spencer and Lesley Johnson.  See Johnson, et al. v.

MacNaughton, et al., Civil No. 06-1-0124-01 EEH (Jan. 25, 2006)

("State Court Complaint"), a copy of which is attached as Ex. E

4

to the Stipulated Facts; Stipulated Facts ¶ 5.  The State Court
Complaint alleges that the Johnsons and 3139 entered into a sales
contract on Lot 3 of the "Pu'uwai Reef Cottages located at 3139
Diamond Head Road."  State Court Complaint ¶ 10.  It alleges that
3139 reneged on the agreement to sell the completed home to the
Johnsons and that, instead, 3139 plans to sell the house to
another buyer for a higher price.  Id. ¶ 2.  The Johnsons say
that they did not receive a complete set of plans for the house
being built for them by 3139, as contemplated by their agreement.
Id. ¶¶ 25-26.  The State Court Complaint also alleges that 3139
and MacNaughton failed to provide adequate supervision concerning
the construction of the home.  Id. ¶ 32.  It alleges that only
some of the construction errors observed by the Johnsons have
been corrected.  Id. ¶¶ 33-34.  It also alleges that the home was
supposed to have been completed by December 2005, but, as of the
filing of the State Court Complaint, was still incomplete.  Id.
¶ 37.

Count I of the State Court Complaint seeks specific
performance of the agreements to build the home and sell it to
the Johnsons.  Count II seeks a declaratory judgment that 3139
and MacNaughton must specifically perform the agreements, as well
as pay compensatory damages.  Count III asserts a breach of
contract claim arising out of the alleged failure by 3139 and
MacNaughton to comply with their obligations.  Counts IV and V

allege that MacNaughton made fraudulent and negligent misrepresentations of material facts.  Count VI asserts a claim for promissory estoppel.  Count VII asserts a claim for breach of good faith and fair dealing.  Count VIII seeks punitive damages.

The defense of the State Court Complaint was tendered by 3139 and MacNaughton to First Specialty.  See Stipulated Facts ¶ 6.  On or about March 17, 2006, First Specialty, through its attorneys, Cresswell, Echeguren, Rodgers & Noble, denied coverage.  See Ex. F to Stipulated Facts.  This denial stated that there were "no allegations of 'property damage' caused by an 'occurrence,' as those terms are defined in the policy."  Id. The denial reasoned that specific performance is a type of injunctive relief, and therefore does not constitute damages. The denial stated that punitive damages were not covered by the 3139 Policy, reasoned that the economic loss alleged by the Johnsons did not constitute "property damage," and stated that, because the State Court Complaint alleged that 3139 had failed to timely complete the construction of the home, it did not allege an "occurrence" because it did not allege an "accident." Finally, the denial stated that coverage was excluded under the expected or intended injury exclusion.  Id.

On or about July 18, 2006, 3139's attorneys asked First Specialty to reconsider the denial of coverage.  See Ex. G to Stipulated Facts.  On or about August 9, 2006, First Specialty

6

declined to reconsider its denial.  See Ex. H to Stipulated

Facts.

III.        SUMMARY JUDGMENT STANDARD.

        Summary judgment shall be granted when

        the pleadings, depositions, answers to
        interrogatories, and admissions on file,
        together with the affidavits, if any, show
        that there is no genuine issue as to any
        material fact and that the moving party is
        entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Miller v. Glenn Miller Prods.,

Inc., 454 F.3d 975, 987 (9th Cir. 2006); Porter v. Cal. Dep't of

Corr., 419 F.3d 885, 891 (9th Cir. 2005).  One of the principal

purposes of summary judgment is to identify and dispose of

factually unsupported claims and defenses.  Celotex Corp. v.

Catrett, 477 U.S. 317, 323-24 (1986).  Accordingly, "[o]nly

admissible evidence may be considered in deciding a motion for

summary judgment."  Miller, 454 F.3d at 988.

        Summary judgment must be granted against a party that

fails to demonstrate facts to establish what will be an essential

element at trial.  See id. at 323.  A moving party has both the

initial burden of production and the ultimate burden of

persuasion on a motion for summary judgment.  Nissan Fire &

Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir.

2000).  The burden initially falls on the moving party to

identify for the court "those portions of the materials on file

that it believes demonstrate the absence of any genuine issue of

material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987.  "A fact is material if it could affect the outcome of the suit under the governing substantive law."  Miller, 454 F.3d at 987.

When the moving party bears the burden of proof at trial, the moving party carries its initial burden on a motion for summary judgment when it "'come[s] forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.'"  Id. (quoting C.A.R. Trans. Brokerage Co. v. Darden Rest., 213 F.3d 474, 480 (9th Cir. 2000)).

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor."  Miller, 454 F.3d at 988 (quotations and brackets omitted).

IV.     FIRST SPECIALTY HAS NO DUTY TO DEFEND 3139 AND MACNAUGHTON.

This is a diversity action.  See Notice of Removal (Nov. 20, 2006) ¶ 5.  Federal courts sitting in diversity apply state substantive law and federal procedural law.  See Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001).  When interpreting state law, a federal court is bound by

the decisions of a state's highest court.  Ariz. Elec. Power
Coop. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995).  In the
absence of such a decision, federal courts attempt to predict how
the highest state court would decide the issue, using
intermediate appellate court decisions, decisions from other
jurisdictions, statutes, treatises, and restatements as guidance.
Id.; see also Burlington Ins. Co. v. Oceanic Design & Constr.,
Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent this case
raises issues of first impression, our court, sitting in
diversity, must use its best judgment to predict how the Hawaii
Supreme Court would decide the issue." (quotation and brackets
omitted)).

　　　　The removed Complaint contains two counts.  The first
seeks to establish that, pursuant to the terms of the 3139
Policy, First Specialty had a duty to defend 3139 and MacNaughton
from the claims asserted in the State Court Complaint (Count I).
The removed Complaint also seeks a determination that First
Specialty denied insurance coverage in bad faith (Count II).

　　　　Under Hawaii law, general rules of contract
construction apply to the interpretation of insurance contracts.
Dawes v. First Ins. Co. of Haw., 77 Haw. 117, 121, 883 P.2d 38,
42 (1994).  Insurance policies must be read as a whole and
construed in accordance with the plain meaning of its terms,
unless it appears that a different meaning is intended.  Id. at

9

121, 883 P.2d at 42; <u>First Ins. Co. of Haw. v. State</u>, 66 Haw. 413, 423, 665 P.2d 648, 655 (Haw. 1983); <u>see</u> <u>also</u> Haw. Rev. Stat. § 431:10-237 (Michie 2004) ("[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy").

Because insurance contracts are contracts of adhesion, they must be construed liberally in favor of the insured, and any ambiguities must be resolved against the insurer.  Put another way, the rule is that policies are to be construed in accordance with the reasonable expectations of a layperson.  <u>Dawes</u>, 77 Haw. at 131, 883 P.2d at 42.

The burden is on the insured to establish coverage under an insurance policy.  <u>See</u> <u>Sentinel Ins. Co. v. First Ins. Co. of Haw.</u>, 76 Haw. 277, 291 n.13, 875 P.2d 894, 909 n.13 (1994) (as amended on grant of reconsideration).  The insurer has the burden of establishing the applicability of an exclusion.  <u>See</u> <u>id.</u> at 297, 875 P.2d at 914.

The duty to indemnify is owed "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion." <u>Dairy Road Partners v. Island Ins.</u>, 92 Haw. 398, 413, 922 P.2d 93, 108 (2000).  The obligation to defend an insured is broader than the duty to indemnify.  The duty to defend arises when there is any potential or possibility for coverage.  <u>Sentinel</u>, 76 Haw.

at 287, 875 P.2d at 904.  However, when the pleadings fail to
allege any basis for recovery under an insurance policy, the
insurer has no duty to defend.  <u>Pancakes of Haw. v. Pomare
Props.</u>, 85 Haw. 286, 291, 944 P.2d 83, 88 (1997).  In other
words, for First Specialty to obtain summary judgment on its duty
to defend, First Specialty must prove that it would be impossible
for a claim in the underlying lawsuit to be covered by the 3139
Policy.  <u>See</u> <u>Tri-S Corp. v. W. World Ins. Co.</u>, 110 Haw. 473, 488,
135 P.3d 82, 97 (2006).  On the other hand, for 3139 &
MacNaughton to obtain summary judgment establishing that First
Specialty had a duty to defend, 3139 and MacNaughton need only
prove the possibility of coverage.  <u>Id.</u>

     "Hawaii adheres to the 'complaint allegation rule.'"
<u>Burlington Ins. Co. v. Oceanic Design & Constr., Inc.</u>, 383 F.3d
940, 944 (9th Cir. 2004) (citing <u>Pancakes of Hawaii, Inc. v.
Pomare Props. Corp.</u>, 85 Haw. 286, 994 P.2d 83 (Haw. Ct. App.
1997)).  In that regard,

> The focus is on the alleged claims and facts.
> The duty to defend "is limited to situations
> where the pleadings have alleged claims for
> relief which fall within the terms for
> coverage of the insurance contract.  'Where
> pleadings fail to allege any basis for
> recovery within the coverage clause, the
> insurer has no obligation to defend.'"

<u>Id.</u> at 944-45 (citing <u>Hawaiian Holiday Macadamia Nut Co. v.
Indus. Indem. Co.</u>, 76 Haw. 166, 872 P.2d 230)).

A.   The 3139 Policy Does Not Cover All Claims Arising
     Out of the Construction of the Project.

At the hearing on the motion, 3139 and MacNaughton argued that, based on the Limitation of Coverage to Designated Premises or Project endorsement, see Ex. F at Bates Stamp F 00257, the 3139 Policy could be read to cover all claims arising out of the "construction of the project." That argument, however, requires a tortured reading of the 3139 Policy. The Limitation of Coverage to Designated Premises or Project endorsement states that the 3139 Policy "applies only to 'bodily injury', 'property damage', 'personal and advertising injury' and medical expenses arising out of: . . . 2. The Project shown in the Schedule." It defines the project "as Puuwai, and is the construction of three houses on a one acre site." Id. The plain language of the endorsement therefore limits coverage to claims arising out of the construction of the project to those asserting "bodily injury," "property damage," "personal and advertising injury," and medical expenses. The endorsement is unambiguous and does not provide coverage for all claims arising out of the construction of the project.

B.   None of the State Court Complaint Claims Involves
     An "Accident."

Because all claims arise from a contract, the court agrees with First Specialty that none of the underlying claims is covered. The 3139 Policy covers property damage only if "caused

12

by an 'occurrence' that takes place in the 'coverage territory."
3139 Policy, Section I--Coverages ¶ 1(b).  The 3139 Policy
defines "occurrence" as "an accident, including continuous or
repeated exposure to substantially the same general harmful
conditions."  3139 Policy, Section V--Definitions ¶ 13.  The 3139
Policy excludes insurance coverage for property damage "expected
or intended from the standpoint of the insured"  3139 Policy,
Section I--Coverages ¶ 2(a).

Neither 3139 nor MacNaughton claims that Counts I and
II of the underlying State Court Complaint trigger First
Specialty's duty to defend.  Those counts seek specific
performance of the agreements to build the home and a declaratory
judgment that 3139 and MacNaughton must specifically perform the
agreements.  Counts I and II do not pertain to property damage
arising out of an occurrence.  Count VI's promissory estoppel
claim similarly does not trigger First Specialty's duty to
defend, as the relief sought in that count is merely the
enforcement of the promises allegedly made by 3139 and
MacNaughton.  There is no claim by 3139 and MacNaughton that
Count VIII, which seeks punitive damages, triggers coverage.
Because the 3139 Policy does not specifically provide insurance
for punitive damages, that policy "shall not be construed" to
provide for such coverage.  See Haw. Rev. Stat. § 431: 10-240.
Nor are 3139 and MacNaughton claiming coverage based on the

13

fraudulent misrepresentation claim asserted in Count IV.  That coverage would be precluded because it concerns an alleged intentional act.  This leaves only Count III (breach of contract), Count V (negligent misrepresentation), and Count VII (breach of good faith and fair dealing) as the possible counts of the State Court Complaint that might trigger First Specialty's duty to defend.

Counts III (breach of contract) and VII (breach of good faith and fair dealing) are contract or contract-based claims arising out of 3139's and MacNaughton's alleged failure to comply with their obligations.  These claims do not trigger First Specialty's duty to defend.  In reaching this conclusion, the court relies on the Ninth Circuit's decision in Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 946-48 (9th Cir. 2004).

In Burlington, the Ninth Circuit, applying Hawaii law, considered the definition of "accident" stated in Hawaiian Holiday Macadamia Nut Co. in determining that Burlington Insurance Company owed no duty to defend Oceanic Design and Construction, Inc., against contract and contract-related tort claims.  Oceanic was a named insured under a commercial general liability insurance policy issued by Burlington and had contracted to build a single-family residence for certain homeowners.  Id. at 943.  After construction was completed, the

14

homeowners refused to pay Oceanic because they were not satisfied with the work.  Id.  Oceanic sued the homeowners in Hawaii state court, alleging that they had breached the contract by failing to pay for the construction.  Id.  The homeowners filed a counterclaim against Oceanic, asserting claims for, among other things, negligent breach of contract and NIED.  Id.  Burlington agreed to defend Oceanic subject to a reservation of rights and filed a federal action seeking a declaration that it owed no duty to defend or indemnify Oceanic.  Id.  The district court granted summary judgment in favor of Burlington, concluding that the homeowners' claims against Oceanic were not covered by the insurance policy.  Id. at 944.  Oceanic appealed.  Id.

On appeal, the Ninth Circuit noted that the insurance policy "cover[ed] claims for liability for 'bodily injury' or 'property damage' if 'caused by an occurrence'" and that the policy "defined 'occurrence' as 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions.'"  Id. at 943, 945.  Applying the Hawaii Supreme Court's definition of "accident," the Ninth Circuit concluded that the homeowners' claim for negligent breach of contract was not covered by the policy, reasoning:

> In Hawaii, an occurrence "cannot be the
> expected or reasonably foreseeable result of
> the insured's own intentional acts or
> omissions."  If Oceanic breached its
> contractual duty by constructing a
> substandard home, then facing a lawsuit for

15

> that breach is a reasonably foreseeable
> result.

Id. at 948.

The court is unpersuaded by 3139 and MacNaughton that Burlington is inapplicable because it involved a CGL policy, not an OCP Policy.  Nothing in the 3139 Policy indicates that it is an OCP Policy.  Rather, it states that it is a CGL Policy.  More importantly, its language is that of a CGL Policy.  The argument by 3139 and MacNaughton concerning coverage under an OCP Policy is therefore off-point.

The State Court Complaint, as liberally read by 3139 and MacNaughton, arguably also asserts claims for negligent supervision and/or vicarious liability for the negligence of the independent contractors hired to build the project.  Such claims, however, are contract-related tort claims not covered under the 3139 Policy.  Regarding the homeowners' claim for NIED asserted in Burlington, the Ninth Circuit noted that the district court had "concluded that the emotional distress claim did not trigger the duty to defend because it was a contract-based tort claim which arose only out of the contractual relationship between Oceanic and the homeowners."  Id. at 953.  The Ninth Circuit agreed, stating, "[U]nder the given facts of this case, but for the contractual relationship between Oceanic and the homeowners, the homeowners would not have a claim for [NIED].  Accordingly, the homeowners' emotional distress claim cannot be read to

16

constitute a covered occurrence under the policy at issue." Id.
at 955.  The court also noted that "our holding is consistent
with the line of cases from the District of Hawaii that hold that
contract and contract-based tort claims are not within the scope
of CGL policies under Hawaii law." Id. at 949 (citing CIM Ins.
Corp. v. Midpac Auto Ctr., Inc., 108 F. Supp. 2d 1092 (D. Haw.
2000); CIM Ins. Corp. v. Masamitsu, 74 F. Supp. 2d 975 (D. Haw.
1999); WDC Venture v. Hartford Accident & Indem. Co., 938 F.
Supp. 671 (D. Haw. 1996)); accord State Farm Fire & Cas. Co. v.
Scott, Civil No. 06-119 SOM/BMK, slip op. at 16-18 (Jan. 24,
2007).

        In Burlington, the underlying complaint alleged a
breach of contract based, in part, on alleged failures to plan,
supervise, inspect, and construct a residence.  Because the
allegations of breaches of duty merely described how the contract
to build a residence was breached, the Ninth Circuit stated that
"the Court cannot fairly construe this language to state a
separate independent cause of action for negligence."
Burlington, 383 F.3d at 948.  Those claims were contract-related
tort claims that did not trigger the duty to defend.  Similarly,
here, the Johnsons' possible claim that 3139 and/or MacNaughton
failed to properly supervise the independent contractors is not
an independent cause of action, but instead part of the breach of
contract claim.  See State Court Complaint ¶¶ 32 ("The Defendants

have consistently failed to provide adequate supervision in the construction of the Johnsons' home and in the construction of the remainder of the project."), and Count III (breach of contract) (incorporating ¶ 32 by way of ¶ 50).

As noted by the Ninth Circuit in <u>Burlington</u>, the district court in <u>WDC Venture</u>, 938 F. Supp. at 677-78, similarly held that contract and contract-based tort claims are not covered under Hawaii insurance law.  In <u>WDC Venture</u>, merchants and food providers doing business in the International Market Place had filed two lawsuits against WDC Venture, asserting claims for breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, negligence, misrepresentation, breach of the covenant of quiet enjoyment, violation of the Racketeer Influenced and Corrupt Organizations Act, and constructive or retaliatory eviction.  <u>Id.</u> at 673.  WDC Venture settled both actions.  <u>Id.</u>  Insured under a policy issued by Westchester Surplus Lines Insurance Company ("Westchester"), WDC Venture sought declaratory relief in federal court regarding Westchester's duty to reimburse WDC for the defense and to indemnify WDC.  <u>Id.</u> at 673-74.

Westchester moved for summary judgment, arguing that "it is not liable under the Policy for contract-based claims," which Westchester contended "were derivative of the contractual relationship between WDC and the tenants and are therefore

18

outside the scope of Policy coverage." <u>Id.</u> at 677.  The court
noted that "there are no cases in Hawaii that are directly on
point regarding the issue of insurance recovery for contract-
based claims," but "conclude[d] that the Hawaii Supreme Court
would follow the reasoning set forth in [<u>Stanford Ranch v.
Maryland Casualty Co.</u>, 89 F.3d 618, 625-26 (9th Cir. 1996)]."
That case "held that the underlying lawsuits (which alleged
claims based on breach of contract, negligent and intentional
misrepresentation, and nondisclosure) depended on the existence
of a contract and thus were not covered under the policies."  <u>Id.</u>
at 678-79.

        The court also concluded in <u>WDC Venture</u> that "policy
coverage of such contractual-based allegations would be contrary
to public policy."  <u>Id.</u> at 678-79 ("There is simply no reason to
expect that such a liability would be covered under a
comprehensive liability policy which has, as its genesis, the
purpose of protecting an individual or entity from liability for
essentially accidental injury to another individual, or property
damage to another's possessions, even if, perhaps, the coverage
of the policy has been expanded to cover other non-bodily
injuries <u>that sounded in tort</u>." (emphasis in original)).  Because
the court found that "WDC seeks recovery here for tort and
contract claims <u>that arise from the contractual relationship</u>,"

the court concluded that the underlying claims were not covered by the policy. Id. at 679 (emphasis in original).

For the reasons set forth in Burlington and WDC Venture, the Johnsons' breach of contract claim (Count III) and breach of good faith and fair dealing claim (Count VII) do not trigger a duty to defend under the 3139 Policy.[1]

Like the underlying claims in Burlington and WDC Venture, the possible claims of negligent supervision and vicarious liability based on the negligence of the independent contractors building the project arose solely because of the contractual relationship between the Johnsons and 3139. See Burlington, 383 F.3d at 955 (concluding that claims for NIED were not covered by the policy because, "under the given facts of this case, 'but for the contractual relationship between Oceanic and the homeowners, the homeowners would not have a claim for [NIED]'"); WDC Venture, 938 F. Supp. at 679 ("Since WDC seeks recovery here for tort and contract claims that arise from the

_____

[1]The Johnsons' promissory estoppel claim (Count VI) does not trigger a duty to defend under the 3139 Policy. Not only is promissory estoppel an equitable claim for which the Johnsons are merely seeking specific performance, see, e.g., Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd., 100 Haw. 149, 164, 58 P.3d 1196, 1211 (Haw. 2002), it is a contract-based claim that does not trigger insurance coverage. See Masamitsu, 74 F. Supp. 2d at 986 ("The underlying dispute was a business disagreement evidently involving personal animosity. Breaches of agreements or contracts (or related promissory estoppel claims) were alleged. These contract, or contract-like, claims are not covered [and do not trigger a duty to defend].").

<u>contractual relationship</u>, the court finds that the underlying lawsuits are outside the scope of policy coverage in this case.").

While 3139 and MacNaughton may have intended to obtain OCP coverage, including coverage against claims for construction defects and negligent supervision, the 3139 Policy is a CGL Policy. It contains an integration clause that precludes the reading of OCP coverage into the 3139 Policy. 3139 Policy, Common Policy Conditions, section B ("This policy contains all the agreements between you and us concerning the insurance afforded."). Parol evidence is not admissible to show the parties' intent under Hawaii law. <u>State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc.</u>, 90 Haw. 315, 324, 978 P.2d 753, 762 (1999) ("As the Agreement is an integrated document, the parol evidence rule bars consideration of Marn's belated assertions that he did not intend to settle his property damage claim."). Instead, whether First Specialty has a duty to defend 3139 and MacNaughton from the state-court claims turns on the language of the unambiguous 3139 Policy. <u>See</u> <u>Graham v. Wash. Univ.</u>, 58 Haw. 370, 375, 569 P.2d 896, 900 (1977) (allowing extrinsic evidence, i.e., all evidence outside of the writing including parol evidence, to be considered by a court to determine the true intent of the parties only if there is doubt or controversy as to the meaning of the language embodying their bargain); <u>see also</u> 17A Am. Jur.

21

2d <u>Contracts</u> § 355 (1991) ("In case a contract, or any of its language or parts, is ambiguous and uncertain so that construction is called for, the surrounding circumstances at the time it was made should be considered for the purpose of ascertaining its meaning and the intention of the parties . . . .").

Nor is the court persuaded that the Johnsons' negligent misrepresentation claim (Count V) triggers First Specialty's duty to defend.  The Johnsons allege that MacNaughton knew or should have known that the Johnsons would reasonably rely on representations made by MacNaughton.  State Court Complaint ¶ 61. The Johnsons allege that they justifiably relied on those representations to their detriment.  <u>Id.</u> ¶ 62.  The damages requested by the Johnsons, <u>id.</u> ¶ 63, make it clear that their negligent misrepresentation claim is also a contract-related tort claim for which no duty to defend arises under <u>Burlington</u>.  For example, the Johnsons seek damages "due to the delays in completion of their house; hiring fees of specialists to attempt to facilitate the completion of the home; increased construction and material costs due to delays, error, and breaches of agreements."[2]  The Johnsons' negligent misrepresentation claim is not based on any duty independent of the contract.  To the contrary, the State Court Complaint alleges that MacNaughton's

---

[2]Plaintiffs are not claiming that the Johnsons' fraudulent misrepresentation claim (Count IV) triggers First Specialty's duty to defend.

alleged misrepresentations pertained to the contract and to performance of the contract to build the home.

        C.    No "Accident" Resulted in Covered "Property Damage."

     Even if the State Court Complaint alleged a claim that did constitute an "occurrence" or an "accident," there would still be no coverage for the claims, because the State Court Complaint does not allege any property damage covered under the 3139 Policy.

     The 3139 Policy states that First Specialty "will pay those sums that the insured [3139] becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."  3139 Policy, Section I--Coverages ¶ 1(a).  The 3139 Policy defines "property damage" as "Physical injury to tangible property, including all resulting loss of use of that property" or "Loss of use of tangible property that is not physically injured."  3139 Policy, Section V--Definitions ¶ 17.

     Paragraphs 1 and 2 of the State Court Complaint allege that 3139 was supposed to sell the completed home to the Johnsons, but that 3139 has no intent to sell the property to the Johnsons pursuant to the terms of their contract.  Instead, the Johnsons allege, 3139 wants to sell the home to another buyer for a higher price.  These allegations, combined with the Johnsons' claim for specific performance, indicate that, at the time the State Court Complaint was filed, the Johnsons did not own the

23

home being built.  Accordingly, even assuming the State Court
Complaint alleged property damage, the Johnsons' property was not
damaged.  Based on the allegations of the State Court Complaint,
the Johnsons lack standing to directly assert that their property
was destroyed.  Instead, the Johnsons' alleged damages flow from
the alleged breach of the construction contract, rather than
damage to any home.

C.   First Specialty Did Not Breach the Duty of Good
Faith and Fair Dealing.

Count II of this removed Complaint alleges that First
Specialty denied coverage in bad faith.  Because there was no
possibility of coverage under the 3139 Policy, First Specialty
has established as a matter of law that it did not deny coverage
in bad faith.

The court is unconvinced by 3139's and MacNaughton's
argument that summary judgment on Count II should be denied
because, even if an insurance company properly denied a claim, it
is possible for the insurance company to have acted in bad faith.
Although that argument might be true in some circumstances, 3139
and MacNaughton have raised no facts from which any trier of fact
could infer that the denial in this case was in bad faith.  To
the contrary, 3139's and MacNaughton's only argument is that this
court should continue this part of the motion under Rule 56(f) of
the Federal Rules of Civil Procedure to allow them to take
discovery to oppose the motion.

24

A party requesting a continuance bears the burden of (1) filing a timely application which specifically identifies relevant information; (2) demonstrating that there is some basis to believe that the information sought exists; and (3) establishing that such information is essential to resist the summary judgment motion.  See Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1130 (9th Cir. 2004) (citation omitted); Campbell, 138 F.3d at 779.  As 3139 and MacNaughton do not show that relevant information exists or that discovery is essential to resist the summary judgment motion on Count II, the requested continuance is not appropriate.

At the hearing on the motion, 3139 and MacNaughton argued that, because First Specialty may have known about their intent to obtain an OCP Policy, First Specialty's denial of coverage may have been in bad faith.  However, unambiguous language of the 3139 Policy indicates that it is a CGL Policy that provides no coverage for the state court claims.  The denial of coverage under the 3139 Policy therefore could not have been in bad faith.  Moreover, 3139 and MacNaughton have not included a claim in the Complaint before this court that they were issued a policy that did not reflect the intent of the parties.  Whether 3139 and MacNaughton got the insurance they requested may be or become the subject of some other lawsuit.  However, this court

has no reason to think it would have jurisdiction over such a
claim or that it would be limited to the present parties.

V.        CONCLUSION.

        In light of the foregoing, the court grants First
Specialty's motion for summary judgment and denies the summary
judgment motion filed by 3139 and MacNaughton.  Under the 3139
Policy's clear language, First Specialty has no duty under the
CGL Policy to defend 3139 and MacNaughton from the claims
asserted in the State Court Complaint, and First Specialty did
not deny coverage in bad faith.

        This court makes no determination as to whether any
person or company may be liable to 3139 and MacNaughton based on
their alleged expectation that they were obtaining an OCP Policy.
The present case only asks this court to determine First
Specialty's obligations under the 3139 Policy and whether First
Specialty denied insurance coverage under that policy in bad
faith.

The Clerk of Court is directed to enter judgment in favor of First Specialty and to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 8, 2007.

_Susan Oki Mollway_
Susan Oki Mollway
United States District Judge

3139 Properties, LLC, et al. v. First Specialty Insurance Corp., Civ. No. 06-00619 SOM/LEK; ORDER GRANTING FIRST SPECIALTY INSURANCE CORPORATION'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT.